UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

JOHN PAK,                                    )   Case No. EDCV 08-714-OP
                                             )
                        Plaintiff,           )
                                             )   MEMORANDUM OPINION; ORDER
            v.                               )
                                             )
MICHAEL J. ASTRUE,                           )
Commissioner of Social Security,             )
                                             )
                        Defendant.           )
                                             )

        The Court[1] now rules as follows with respect to the disputed issues listed in

the Joint Stipulation ("JS").[2]

/ / /

/ / /

_____

        [1]  Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before
the United States Magistrate Judge in the current action.  (See Dkt. Nos. 8, 9.)

        [2]  As the Court advised the parties in its Case Management Order, the
decision in this case is being made on the basis of the pleadings, the
Administrative Record, and the Joint Stipulation filed by the parties.  In
accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has
determined which party is entitled to judgment under the standards set forth in 42
U.S.C. § 405(g).

# I.

## DISPUTED ISSUES

As reflected in the Joint Stipulation, the disputed issues which Plaintiff is raising as the grounds for reversal and/or remand are as follows:

1.   Whether the Administrative Law Judge ("ALJ") properly considered the treating physician's opinion regarding Plaintiff's mental limitations;

2.   Whether the ALJ properly considered the side effects of Plaintiff's medications;[3]

3.   Whether the ALJ properly considered the treating clinician's opinion;

4.   Whether the ALJ properly considered the actual physical and mental demands of Plaintiff's past relevant work;

5.   Whether the ALJ properly considered the lay witness testimony; and

6.   Whether the ALJ posed a complete hypothetical to the vocational expert ("VE").

(JS at 2.)

# II.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied.  DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991).  Substantial evidence means "more

---

[3]  Plaintiff contends that the ALJ failed to consider the side effects of his medications, which included insomnia and weight gain, within the claim regarding the ALJ's assessment of the opinions of the treating physician.  (JS at 4.)  The Court will address the ALJ's consideration of Plaintiff's side effects as a separate issue.

2

1  than a mere scintilla" but less than a preponderance.  <u>Richardson v. Perales</u>, 402

2  U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); <u>Desrosiers v. Sec'y of</u>

3  <u>Health & Human Servs.</u>, 846 F.2d 573, 575-76 (9th Cir. 1988).  Substantial

4  evidence is "such relevant evidence as a reasonable mind might accept as

5  adequate to support a conclusion."  <u>Richardson</u>, 402 U.S. at 401 (citation

6  omitted).  The Court must review the record as a whole and consider adverse as

7  well as supporting evidence.  <u>Green v. Heckler</u>, 803 F.2d 528, 529-30 (9th Cir.

8  1986).  Where evidence is susceptible of more than one rational interpretation, the

9  Commissioner's decision must be upheld.  <u>Gallant v. Heckler</u>, 753 F.2d 1450,

10 1452 (9th Cir. 1984).

## III.

## DISCUSSION

**A.** **The ALJ Properly Considered the Opinions of Plaintiff's Treating Psychiatrist.**

Plaintiff contends that the ALJ erroneously rejected the opinion of his

treating psychiatrist, Dr. Marianna Soor-Melka.  (JS at 3-5.)  Specifically,

Plaintiff asserts that the ALJ failed to provide specific or legitimate reasons

supported by substantial evidence to reject Dr. Soor-Melka's opinion regarding

Plaintiff's "moderate and marked limitations."  (<u>Id.</u> at 5.)  The Court disagrees.

It is well-established in the Ninth Circuit that a treating physician's

opinions are entitled to special weight, because a treating physician is employed

to cure and has a greater opportunity to know and observe the patient as an

individual.  <u>McAllister v. Sullivan</u>, 888 F.2d 599, 602 (9th Cir. 1989).  "The

treating physician's opinion is not, however, necessarily conclusive as to either a

physical condition or the ultimate issue of disability."  <u>Magallanes v. Bowen</u>, 881

F.2d 747, 751 (9th Cir. 1989).  The weight given a treating physician's opinion

depends on whether it is supported by sufficient medical data and is consistent

3

with other evidence in the record.  See 20 C.F.R. § 404.1527(d)(2).  If the treating physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing" reasons.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995); Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991).  If the treating physician's opinion is controverted, it may be rejected only if the ALJ makes findings setting forth specific and legitimate reasons that are based on the substantial evidence of record.  Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Magallanes, 881 F.2d at 751; Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).

However, the Ninth Circuit also has held that "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."  Thomas, 278 F.3d at 957; see also Matney ex rel. Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992).  A treating or examining physician's opinion based on the plaintiff's own complaints may be disregarded if the plaintiff's complaints have been properly discounted.  Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 602 (9th Cir. 1999); see also Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997); Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995).  Additionally, "[w]here the opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence; it is then solely the province of the ALJ to resolve the conflict."  Andrews, 53 F.3d at 1041; Magallanes, 881 F.2d at 751; Miller v. Heckler, 770 F.2d 845, 849 (9th Cir. 1985).

Here, Dr. Soor-Melka's progress notes from August 2005 though December 2006 indicate that Plaintiff's affect was often blunted, but for the most part, he seemed stable, denied hearing voices, or otherwise indicated he was fine.

4

1  (Administrative Record ("AR") at 153-70.)  Three separate progress notes also
2  specifically state that Plaintiff was stable on medications.  (Id. at 163, 166-67.)
3  Dr. Soor-Melka's treatment plan consisted of prescribing mainly Zydis and
4  Zyprexa with monthly followup visits.  (Id. at 153-70, 175-77.)  Additionally, Dr.
5  Soor-Melka completed two "Work Capacity Evaluation[s] (Mental)" on October
6  10, 2006, and September 20, 2007.  (Id. at 220-23.)  In the October 2006
7  evaluation, Dr. Soor-Melka indicated that Plaintiff had marked limitations in the
8  following areas: (1) the ability to carry out very short and simple instructions; (2)
9  the ability to perform activities within a schedule, maintain regular attendance,
10  and be punctual with customary tolerance; (3) the ability to sustain an ordinary
11  routine without special supervision; (4) ability to work in coordination with or in
12  proximity to others without being distracted by them; (5) the ability to make
13  simple work-related decisions; (6) the ability to interact appropriately with the
14  general public; (7) the ability to get along with co-workers and respond
15  appropriately to criticism from supervisors; and (8) the ability to set realistic
16  goals or make plans independently of others.  (Id. at 220-21.)  Dr. Soor-Melka
17  opined that she anticipated Plaintiff would be absent from work three days or
18  more per month due to his impairments or treatment.  (Id. at 221.)

19      In the September 2007 evaluation, Dr. Soor-Melka indicated that Plaintiff
20  had marked limitations in the following areas: (1) the ability to remember
21  locations and work-like procedures; (2) the ability to perform activities within a
22  schedule, maintain regular attendance, and be punctual with customary tolerance;
23  (3) the ability to sustain an ordinary routine without special supervision; (4)
24  ability to work in coordination with or in proximity to others without being
25  distracted by them; (5) the ability to interact appropriately with the general
26  public; (6) the ability to accept instructions and respond appropriately to criticism
27  from supervisors; (7) the ability to get along with co-workers and respond

28

appropriately to criticism from supervisors; (8) the ability to respond appropriately to changes in the work setting; and (9) the ability to set realistic goals or make plans independently of others.  (Id. at 222-23.)  Again, Dr. Soor-Melka opined that she anticipated Plaintiff would be absent from work three days or more per month due to his impairments or treatment.  (Id. at 223.)

Dr. Soor-Melka's progress notes and conservative treatment plan do not support her findings that Plaintiff was markedly limited in the above-stated areas. (Id. at 153-70, 175-77, 220-23.)  The evaluations also consisted of nineteen checklist questions, with no room for analysis or explanation as to Plaintiff's functional limitations.  (Id. at 220-23.)  As a result, Dr. Soor-Melks'a opinion is not entitled to great deference.  Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996) (ALJ properly rejected doctor's opinion because they were check-off reports that did not contain any explanation of the bases of their conclusions); see also Morgan, 169 F.3d at 602.

Moreover, the ALJ specifically considered Dr. Soor-Melka's opinion when he stated:

Progress notes from San Bernardino County Department of Behavioral Health by treating psychiatrist, Dr. Soor-Melka, document schizophrenia disorder, paranoid type, which was improved and/or stabilized with the medication, Zyprexa.  Several progress notes indicate that despite compliance with medication being difficult to assess, given the claimant's dislike of taking medication, he continued to improve.  Notwithstanding consistent documented improvement, Dr. Soor-Melka opined the claimant was significantly limited on a mental basis on October 10, 2006 and September 20, 2007. . . . [¶] While the claimant's treating doctor opined the claimant was moderately to markedly limited . . . , I find these assessments not credible, as they are

6

1
2
3
4

> not supported by the medical record, including Dr. Soor-Melka's own
> progress notes documenting the claimant's improvement on medication
> after only two visits; notwithstanding the claimant's treatment history
> of noncompliance.

5
6
7

(AR at 14-15 (citations omitted).)  Thus, the ALJ found that Dr. Soor-Melka's progress notes and treatment record were inconsistent with her diagnosis of Plaintiff, a specific and legitimate reason for discrediting her opinion.

8
9
10
11
12
13

Further, in rejecting the opinion of Dr. Soor-Melka, the ALJ also relied upon the medical opinions several consultative physicians, Drs. Reynaldo Abeujela, Archimedes Garcia, and Henry Amado. (Id. at 15.)  Dr. Abeujela conducted a complete psychiatric evaluation of Plaintiff on January 9, 2007. (Id. at 144-50.)  Dr. Abeujela provided the following:

14
15
16
17
18
19
20
21
22

> The objective findings in the mental status examination revealed
> some sadness and mild anxiety.  The claimant did not appear to be
> grossly psychotic.  He said that the voices are being controlled by the
> Zyprexa.  He did not appear to be responding to internal stimuli.  He
> appears to be emotionally stable with the Zyprexa. . . . [¶] After
> reviewing the records from Dr. Li and although the claimant was
> diagnosed with schizophrenia, based on the history and mental status
> examination today, there is no mental restriction in this claimant's
> occupational and social functioning.

23
24
25
26
27

(Id. at 148-49.)  Notably, Dr. Abeujela expected that Plaintiff's psychiatric symptoms should abate in less than a year with the continued use of Zyprexa. (Id. at 150.)  Dr. Abeujela, in contrast to Dr. Soor-Melka's findings, concluded that Plaintiff's psychiatric limitations are "none to mild," and that his psychiatric prognosis is fair.  (Id.)

28

1   Next, Dr. Garcia completed a mental residual functional capacity

2   assessment of Plaintiff on May 16, 2005.  (Id. at 188-90.)  Dr. Garcia opined that

3   Plaintiff was not significantly limited in all areas of mental functioning except the

4   ability to understand and remember detailed instructions, and the ability to carry

5   out detailed instructions.  (Id. at 188-89.)  After reviewing Plaintiff's medical

6   records, Dr. Garcia concluded that Plaintiff can "sustain simple repetitive tasks

7   with adequate pace and persistence, can adapt and relate to coworkers and

8   [supervisors]."  (Id. at 190.)

9   Additionally, on January 17, 2007, Dr. Amado reviewed Plaintiff's medical

10  records, including the treating and consultative physicians' findings.  He stated

11  that there are "no allegations of worsening and no new psych impairments are

12  advanced."  (Id. at 140-42.)  Dr. Amado also noted that the medical record

13  suggested Plaintiff positively responded to medications, which greatly mitigated

14  the severity of his mental impairments.  (Id. at 142.)  Further, Dr. Amado

15  affirmed the mental residual functional capacity assessment of Dr. Garcia.  (Id.)

16  In relying on the opinions of the consultative physicians, the ALJ stated:

17  

18          In reaching my decision, significant weight is given to reports by

19      the DDS . . . , and to the consultative psychiatric examiner . . . , which

20      are found fully credible, based on the length, nature and/or extent of the

21      examining physician's relationship with the claimant; supportability

22      with medical signs and laboratory findings; consistency with the record;

23      and areas of specialization.

24  (Id. at 15 (citations omitted).)

25  Finally, the ALJ relied upon the inconsistencies between Dr. Soor-Melka's

26  opinion and that of Dr. Siqing Li, Plaintiff's initial treating psychiatrist.  (AR at

27  15.)  Dr. Li noted that Plaintiff could perform simple household chores, and he

28

found Plaintiff's psychiatric prognosis was poor, "based on patient's treatment history of noncompliance." (Id. at 214-19.)  After two examinations on March 22, 2005, and April 16, 2005, Dr. Li reported improvement with the use of medication. (Id. at 216-19.)  Dr. Li's opinion is consistent with the findings of the consultative examiners.  To the extent that Dr. Soor-Melka's opinion demonstrated Plaintiff's inability to seek employment, the ALJ properly rejected Dr. Soor-Melka's opinion regarding Plaintiff's marked limitations by relying on the opinion of Dr. Li and the opinions of the consultative examiners.  See Thomas, 278 F.3d at 957; see also Matney, 981 F.2d at 1019.

Based on the foregoing, the ALJ provided specific and legitimate reasons, supported by substantial evidence in the record, to reject the opinion of Dr. Soor-Melka.  Thomas, 278 F.3d at 957; Andrews, 53 F.3d at 1041; Magallanes, 881 F.2d at 751; Miller, 770 F.2d at 849.  Thus, there was no error.

**B.**   **The ALJ Did Not Err in Failing to Consider Plaintiff's Medications and Their Side Effects.**

Plaintiff contends that the ALJ failed to consider the side effects of Plaintiff's prescribed medications, which included insomnia and weight gain. (JS at 4.)  The Court disagrees.

Under Ninth Circuit law, the ALJ must "consider *all* factors that might have a 'significant impact on an individual's ability to work.'" Erickson v. Shalala, 9 F.3d 813, 817 (9th Cir. 1993) (quoting Varney v. Sec'y of Health & Human Servs., 846 F.2d 581, 585 (9th Cir.), relief modified, 859 F.2d 1396 (1988)).  Such factors "may include side effects of medications as well as subjective evidence of pain." Erickson, 9 F.3d at 818.  When the ALJ disregards the claimant's testimony as to subjective limitations of side effects, he or she must support that decision with specific findings similar to those required for excess

1 pain testimony, as long as the side effects are in fact associated with the
2 claimant's medications.  See Varney, 846 F.2d at 545; see also Muhammed v.
3 Apfel, No. C98-02952-CRB, 1999 WL 260974 (N.D. Cal. 1999).

4        Despite Plaintiff's contentions, the objective medical record does not
5 support the existence of medication side-effects.  While Plaintiff indicated that he
6 suffers drowsiness, insomnia, and weight gain from Zyprexa (AR at 62, 83, 90),
7 there is no evidence that he reported any side effects from his medication to his
8 treating physicians, or that his treating physicians reported any functional
9 limitations due to his alleged side effects.  (Id. at 139-238.)  Further, the record is
10 devoid of any instances where Plaintiff complained of medication side-effects to
11 his consultative physicians.  (Id.)  Moreover, Plaintiff fails to cite to any medical
12 evidence demonstrating that the alleged drowsiness, insomnia, and weight gain
13 caused him any functional limitations.  At the hearing, Plaintiff provided no
14 testimony that he suffered from any medication side-effects or had any functional
15 limitations from the alleged side-effects.  (Id. at 239-49.)  Notably, the ALJ found
16 Plaintiff to not be credible regarding his subjective symptoms.[4]  Accordingly, the
17 ALJ found, that, "the claimant's statements concerning the intensity, persistence
18 and limiting effects of these symptoms are not entirely credible."  (Id. at 15.)

19        Based on the foregoing, the Court finds that the ALJ did not err by failing
20 to consider the side effects of Plaintiff's medications.

21 **C.     The ALJ Properly Considered the Treating Clinician's Treatment
22        Notes.**

23        Plaintiff also contends that the ALJ erred by failing to properly consider the
24 opinion of the treating clinician, Ms. Kelly Haus.  (JS at 11-12.)  Specifically, on

26 ─────────────────

27        [4]  Plaintiff does not dispute the ALJ's credibility finding.  (See generally
28 JS.)

10

July 25, 2005, Ms. Haus opined that Plaintiff had a Global Assessment of Functioning ("GAF") score of 35.[5]  (AR at 173-74.)  The Court finds no merit to Plaintiff's contention.

Controlling weight can only be given to a "physician,  psychologist, or other acceptable medical source."[6]  The treating clinician here is not a physician, psychologist, or other acceptable medical source, but rather is a Licensed Marriage and Family Therapist.  (AR at 173-74.)  Such opinions may qualify as evidence from "other sources" to show the severity of impairment(s) and how they affect Plaintiff's ability to work.  20 C.F.R. § 404.1513(d).  Because Ms. Haus is not a treating physician, specific and legitimate, or clear and convincing reasons are not required to reject their opinions.  Instead, as an "other source" under section 404.1513(d), the ALJ must provide "reasons that are germane" to that witness in order to discredit that testimony.  Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993).

Here, while the ALJ did not specifically reject Ms. Haus' opinion, any error was harmless due to the nature of that opinion and the assessment of GAF scores generally.  See Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1990) (harmless error rule applies to review of administrative decisions regarding disability).  First, to the extent that the Ms. Haus purported to render an assessment of

---

[5]  A GAF score of 35 is described as "[s]ome impairment in reality testing or communication . . . OR major impairment in several areas, such as work or school, family relations, judgment, thinking or mood.  Id. at 34.

[6]  Title 20 C.F.R. § 404.1527(d)(2) accords controlling weight under certain circumstances  to "treating sources."  A "treating source" is defined in 20 C.F.R. § 404.1502 as the individual's "own physician, psychologist, or other acceptable medical source."  "Acceptable medical sources" are listed in 20 C.F.R. § 404.1513.  Notably, Plaintiff concedes that the treating clinicians are not acceptable medical sources.  (JS at 9.)

11

Plaintiff's mental status, she is not a physician.  Plaintiff acknowledges that Ms. Haus does not qualify as an "acceptable medical source" pursuant to the Commissioner's regulations.  See 20 C.F.R. § 404.1513(a); (JS at 11.)  Next, Ms. Haus' progress notes did not purport to address Plaintiff's functional limitations.  (AR at 173-74.)  Rather, these reports were part of the records from Dr. Selka-Moor's office and treatment record.  (Id.)  Additionally, the Court previously concluded that the ALJ did not err in rejecting the opinion of Dr. Soor-Melka, which was consistent with the opinion of Ms. Haus.  See supra, Discussion, Section III; (AR at 14-15.)  Finally, Ms. Haus' report appears to be an intake report for the purposes of qualifying for medi-cal assistance.  (Id. at 173-74.)

Second, GAF scores reflect the "clinician's judgment of the individual's overall level of functioning . . . [including] psychological, social and occupational functioning" and are not meant to be a conclusive medical assessment of overall functioning, but rather, are only intended to be "useful in planning treatment[,] . . . measuring its impact, and in predicting outcome."  Diagnostic and Statistical Manual of Mental Disorders 32-34 (American Psychiatric Ass'n ed., 4th ed. 2000).  The Social Security regulations do not require an ALJ to take the GAF score into account in determining the extent of an individual's disability.  While the score may help the ALJ assess the claimant's ability to work, it is not essential, and the ALJ's failure to rely on the GAF does not constitute an improper application of the law.  Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002) ("While a GAF score may be of considerable help to the ALJ in formulating the [residual functional capacity ("RFC")], it is not essential to the RFC's accuracy.  Thus, the ALJ's failure to reference the GAF score in the RFC, standing alone, does not make the RFC inaccurate.").  Assuming the ALJ erred by failing to consider and reject Ms. Haus' GAF assessment of Plaintiff, any such error was harmless.  Curry, 925 F.2d 1127.

Based on the foregoing, the Court finds that Plaintiff's claim does not warrant remand.

**D.**     **The ALJ Improperly Determined that Plaintiff Could Perform His Past Relevant Work.**

Plaintiff contends that the ALJ failed to consider the "actual mental and physical requirements of the Plaintiff's past relevant work." (JS at 14-16.) The Court finds that the ALJ committed error by determining Plaintiff could perform his past relevant work.

As discussed above, the ALJ relied on the opinions of the consultative examiners to properly determine that Plaintiff retained the RFC to perform light work consisting of simple, repetitive tasks. (AR at 16, 250); see supra, Discussion, Section III.A. At the hearing, Plaintiff testified that he quit his previous employment due to his inability to meet expectations and difficulty concentrating. (AR at 248-49.) Given the above limitations, the ALJ requested that the VE identify Plaintiff's past relevant work. The VE identified Plaintiff's past relevant work as follows:

> More recently there's the work that [Plaintiff] described today, that of a medical transcriptionist. It's sedentary, semiskilled with an SVP of five, the DOT is 203582058. Before that he was a data entry clerk, that's also sedentary and semiskilled with an SVP of four, DOT is 203582054. He was also a cashier, that's described by the DOT as cashier II, light, unskilled, SVP of two, DOT is 211462010. And then he was a general office clerk or an office worker he called it, but it's best described in the DOT for general office clerk, light, semiskilled, SVP of four, DOT is 219362010.

(AR at 250.) The VE then opined that if Plaintiff was limited to simple,

repetitive tasks, he could only perform his past relevant work as Cashier II.  (Id.)
After reviewing the medical evidence and properly discounting Plaintiff's
credibility, the ALJ agreed with the VE's conclusion and determined that Plaintiff
could perform his past relevant work as Cashier II.  (Id. at 15-16.)

Cashier II requires the ability to perform light work with a Reasoning Level
of three.  See U.S. Dep't of Labor, Dictionary of Occupational Titles [hereinafter
"DOT"], § 211.462-010 (4th ed. Rev. 1991).  A job's reasoning level "gauges the
minimal ability a worker needs to complete the job's tasks themselves."  Meissl v.
Barnhart, 403 F. Supp. 2d 981, 983 (C.D. Cal. 2005).  Reasoning development is
one of three divisions comprising the General Educational Development
("GED")[7] Scale.  DOT App. C.  The DOT indicates that there are six levels of
reasoning development.  Id.  Level three provides that the claimant will be able to
"[a]pply commonsense understanding to carry out instructions furnished in
written, oral, or diagrammatic form.  Deal with problems involving several
concrete variables in or from standardized situations."  DOT App. C § III.

The Court finds that the DOT's Reasoning Level three requirement
conflicts with the ALJ's prescribed limitation that Plaintiff could perform only
simple, repetitive work.  Meissl, 403 F. Supp. 2d at 984-85 (finding that
Reasoning Level two does not conflict with the ALJ's prescribed limitation that
plaintiff perform simple, routine tasks); see also Hackett v. Barnhart, 395 F.3d
1168, 1176 (10th Cir. 2005) (remand is appropriate where the ALJ failed to

---

[7] The GED scale "embraces those aspects of education (formal and
informal) which are required of the worker for satisfactory job performance.  This
is education of a general nature which does not have a recognized, fairly specific
occupational objective.  Ordinarily, such education is obtained in elementary
school, high school, or college.  However, it may be obtained from experience
and self-study."  DOT App. C.

resolve a conflict between the VE's assessment that Plaintiff perform a job with a Reasoning Level of three and the ALJ's finding that Plaintiff was limited to "simple and routine work tasks."); Carter v. Barnhart, No. 05-38-B-W, 2005 WL 3263936 (D. Me. 2005)[8] (finding remand warranted because the ALJ's limitation to simple, repetitive tasks and the DOT's reasoning level of three at least required the ALJ to question the VE about the discrepancy). Further, SSR 00-4p requires that the ALJ resolve any conflicts regarding occupational information. Rhodes v. Astrue, No. 8:07-CV-18-T-MAP, 2008 WL 360823 (M.D. Fla. 2008). When there is an apparent unresolved conflict between the VE testimony and the DOT, as is the case here, the ALJ must elicit a reasonable explanation from the VE to resolve the conflict. SSR 00-4p.

Based on the foregoing, the Court finds that the ALJ erred in determining Plaintiff could perform his past relevant work, and the error was not harmless.

**E.    The ALJ's Failure to Dicuss Lay Witness Testimony Was Harmless Error.**

Plaintiff contends the ALJ failed to provide germane reasons for rejecting the testimony of a lay witness, Hynag Hee Kim. (JS at 18-20). Ms. Kim completed a "Function Report - Adult - Third Party" on November 10, 2006. (AR at 119-26.) In the report, Ms. Kim indicated that Plaintiff has "difficulty talking, poor memory, not able to complete tasks, lack of concentration, difficult[y] understand[ing] things, difficulty following verbal instructions, and problem[s] getting along with others." (Id. at 124.) Ms. Kim also stated that Plaintiff handles stress poorly, by throwing things and yelling. (Id. at 125.)

Title 20 C.F.R. §§ 404.1513(d) and 416.913(d) provides that, in addition to

---

[8] An unpublished case may be cited for its persuasive value pursuant to Ninth Circuit Rule 36-3.

medical evidence, the Commissioner "may also use evidence from other sources to show the severity of [an individual's] impairment(s) and how it affects [her] ability to work," and the Ninth Circuit has repeatedly held that "[d]escriptions by friends and family members in a position to observe a claimant's symptoms and daily activities have routinely been treated as competent evidence." <u>Sprague v. Bowen</u>, 812 F.2d 1226, 1232 (9th Cir. 1987).  This applies equally to the sworn hearing testimony of witnesses (<u>see</u> <u>Nguyen v. Chater</u>, 100 F.3d 1462, 1467 (9th Cir. 1996)), as well as to unsworn statements and letters of friends and relatives. <u>See</u> <u>Schneider v. Comm'r of Soc. Sec. Admin.</u>, 223 F.3d 968, 975 (9th Cir. 2000). If the ALJ chooses to reject such evidence from "other sources," he may not do so without comment.  <u>Nguyen</u>, 100 F.3d at 1467.  The ALJ must provide "reasons that are germane to each witness."  <u>Dodrill v. Shalala</u>, 12 F.3d 915, 919 (9th Cir. 1993).

The ALJ is not relieved of his obligation to comment upon lay witness testimony simply because he has properly discredited the Plaintiff's testimony. To find otherwise would be based upon "the mistaken impression that lay witnesses can never make independent observations of the claimant's pain and other symptoms."  <u>Id.</u>  Similarly, the mere fact that the lay witness is a relative may not be a valid reason alone for rejecting lay witness testimony.  <u>Regennitter v. Comm'r of Soc. Sec. Admin.</u>, 166 F.3d 1294, 1298 (9th Cir. 1999); <u>but see</u> <u>Greger v. Barnhart</u>, 464 F.3d 968, 972 (9th Cir. 2006) (the ALJ's consideration of the claimant's prior girlfriend's close relationship with the plaintiff and desire to help him as a possible reason for bias was a reason germane to that witness).

The ALJ's failure to address the witness' testimony generally is not harmless.  <u>Curry</u>, 925 F.2d at 1131.  In failing to address a lay witness' statement, the error is harmless only if "a reviewing court . . . can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a

different disability determination." <u>Stout v. Comm'r, Soc. Sec. Admin.</u>, 454 F.3d 1050, 1056 (9th Cir. 2006); <u>see also</u> <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 885 (9th Cir. 2006).

Here, while the ALJ discredited Plaintiff's credibility,[9] the ALJ failed to address the lay witness testimony of Ms. Kim. (AR at 15.) However, the ALJ's failure to discredit the testimony of Ms. Kim is harmless error because the ALJ would not have reached a different disability determination having considered it. <u>Stout</u>, 454 F.3d at 1056; <u>see also</u> <u>Robbins</u>, 466 F.3d at 885. This is because Ms. Kim's opinions are not inconsistent with the ALJ's finding that Plaintiff should be limited to simple, repetitive tasks. Even if inconsistent in part, the ALJ rejected Plaintiff's credibility by considering the inconsistences between, Plaintiff's subjective complaints, the medical evidence, Plaintiff's daily activities, and Plaintiff's noncompliance with medication. (AR at 15.) The ALJ provided:

> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.

> In evaluating a claimant's credibility, other information is considered in conjunction with the medical record. It is noteworthy the claimant reported to the consultative examiner that he was able to perform household chores, drive, and cook. Progress notes further indicate the claimant was capable of traveling up to Northern California for a family visit over the holidays, without any difficulty. Such

---

[9] Again, Plaintiff does not dispute the ALJ's credibility finding. (<u>See generally</u> JS.)

1
2
3
4

activities are inconsistent with disability and consistent with the ability to perform work.  As discussed above, his credibility with further undermined by noncompliance with medical advice, noted throughout the record.  Despite noncompliance, the claimant continued to improve.

5
6
7
8

Therefore, based on the medical and nonmedical evidence, it is the finding of the Administrative Law Judge that while partially credible, the claimant's allegations are not credible to the extent of establishing disability.

9
10
11
12
13
14
15
16
17

(AR at 15 (citations omitted).)  As stated above, the ALJ relied upon the consultative physicians to determine that Plaintiff was capable of performing simple and repetitive tasks.  See supra, Discussion, Section III.A; (AR at 15).  The ALJ also discounted Plaintiff's credibility based on evidence of daily activities that were inconsistent with his subjective complaints.  See infra, Discussion, Part III.E; (AR at 15.)  Finally, the ALJ also considered Plaintiff's noncompliance with prescribed medication to discount his credibility.  (AR at 15, 157, 161-62, 215.)

18
19
20
21
22
23
24
25
26
27
28

Next, in rejecting the Plaintiff's credibility, the ALJ essentially rejected the testimony of Ms. Kim, which was cumulative of Plaintiff's own testimony.  Plaintiff indicated that he suffered from many of the same limitations as reported by Ms. Kim in his disability function report, daily activities questionnaire, and during his hearing.  (AR at 57-93, 103-26.)  Additionally, the ALJ rejected Plaintiff's subjective complaints, *inter alia*, based upon Plaintiff's ability to perform household chores, prepare meals, complete house and yard work, travel around, shop for groceries, manage money matters, partake in hobbies and interests, and participate in social activities.  (Id. at 15, 106-07.)  The Court notes that the ALJ could properly rely on Plaintiff's daily activities, such as, *inter alia*, completing household chores, yard work, cooking, cleaning, and shopping, to

support his adverse credibility determination.  See, e.g., Thomas, 278 F.3d at 958-59 (ALJ may properly consider inconsistencies between claimant's testimony and claimant's daily activities); Morgan v. Apfel, 169 F.3d 595, 599-600 (9th Cir. 1999) (ALJ may properly rely on contradictions between claimant's reported limitations and claimant's daily activities); Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998) (daily activities inconsistent with total disability undermined subjective testimony of disabling pain); Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (ALJ may properly rely on claimant's daily activities, including ability to drive); Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989)(ALJ may properly rely on daily activities inconsistent with claim of disabling pain); SSR 96-7p.

Based on the foregoing, even though the ALJ erred by failing to consider the testimony of Ms. Kim, the record reflects medical and other evidence sufficient to discredit Ms. Kim's opinion.  Stout, 454 F.3d at 1056; see also Robbins, 466 F.3d at 885.  Thus, any error was harmless.

**F.    The ALJ Posed a Complete Hypothetical.**

Plaintiff's final argument is that the ALJ failed to pose any hypothetical question to the VE at the hearing.  (JS at 22-23.)  The Court disagrees.

Hypothetical questions posed to a VE need not include all alleged limitations, but rather those limitations which the ALJ finds to exist.  Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989); Copeland v. Bowen, 861 F.2d 536, 540 (9th Cir. 1988); Martinez v. Heckler, 807 F.2d 771, 773-74 (9th Cir. 1986). An ALJ must propose a hypothetical that is based on medical assumptions supported by substantial evidence in the record that reflects each of the claimant's limitations.  Osenbrock v. Apfel, 240 F.3d 1157, 1163-64 (9th Cir. 2001) (citing Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995); see also Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995) (although the hypothetical may be based on

evidence which is disputed, the assumptions in the hypothetical must be supported by the record).

Here, the ALJ opined that Plaintiff retained the residual functional capacity ("RFC") to perform simple, repetitive tasks. (AR at 15-16.) At the October 2, 2007, hearing, the ALJ asked the VE if she had enough information to identify Plaintiff's past relevant work. (Id. at 250.) The VE responded that Plaintiff's past relevant work included the following professions: medical transcriptionist, data entry clerk, cashier II, and general office clerk. (Id.) The ALJ then asked, "[Do] [s]imple repetitive tasks, restriction to simple repetitive tasks eliminate any of these jobs?" (Id.) The VE indicated that it would eliminate all of Plaintiff's past relevant work, except for cashier II. (Id.)

As discussed above, the ALJ did not find Plaintiff's assertions of limitations due to medication side-effects or mental impairments to be valid or supported by the evidence in the record. See supra Discussion, Part III.A-B. As a result, there was no error in the ALJ's hypothetical questions to the VE which did not include Plaintiff's alleged medication side-effects or mental impairments. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) ("Because the ALJ included all of the limitations that he found to exist, and because his findings were supported by substantial evidence, the ALJ did not err in omitting the other limitations that Rollins had claimed, but had failed to prove.") Additionally, the the ALJ did not find Plaintiff's assertions of subjective symptoms to be credible. (AR at 15.) The ALJ also properly relied upon the findings of the consultative physicians in determining Plaintiff's RFC. See supra Discussion, Section III.A. Further, the ALJ specifically provided the VE with a hypothetical question regarding Plaintiff's functional abilities by asking the VE how Plaintiff's past relevant work would be limited by his ability to perform simple, repetitive tasks. (AR at 250.) As a result, there was no error in the ALJ's hypothetical question to

the VE which included the limitations the ALJ found to exist. <u>Magallanes</u>, 881 F.2d at 756; <u>Copeland</u>, 861 F.2d at 540; <u>Martinez</u>, 807 F.2d at 773-74.

## G.  This Case Should Be Remanded for Further Proceedings.

The law is well established that the decision whether to remand for further proceedings or simply to award benefits is within the discretion of the Court. <u>See, e.g.</u>, <u>Salvador v. Sullivan</u>, 917 F.2d 13, 15 (9th Cir. 1990); <u>McAllister</u>, 888 F.2d at 603; <u>Lewin v. Schweiker</u>, 654 F.2d 631, 635 (9th. Cir. 1981). Remand is warranted where additional administrative proceedings could remedy defects in the decision. <u>Lewin</u>, 654 F.2d at 635. The Court finds that the ALJ committed legal error because he did not properly resolve the apparent conflict between the DOT reasoning level requirement and VE testimony regarding Plaintiff's past relevant work. Specifically, the ALJ did not elicit further VE testimony explaining how Plaintiff could be limited to simple, repetitive tasks and still be required to perform work at a Reasoning Level of three. Accordingly, it appears to the Court that this is an instance where further administrative proceedings would serve a useful purpose and remedy defects.

## IV.

## ORDER

Pursuant to sentence four of 42 U.S.C. § 405(g), IT THEREFORE IS ORDERED that Judgment be entered reversing the decision of the Commissioner of Social Security, and remanding this matter for further administrative proceedings consistent with this Memorandum Opinion.

Dated:  July 14, 2009

HONORABLE OSWALD PARADA
United States Magistrate Judge